2024 PA Super 27

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMAEDIONG UMOH | : | |
| | : | |
| Appellant | : | No. 1464 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 8, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-MD-0006278-2022

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED:  February 14, 2024**

Appellant, Emaediong Umoh, appeals from a judgment of sentence that the Court of Common Pleas of Allegheny County imposed for direct criminal contempt.[1]  On direct review, he asserts that the lower court abused its discretion by holding him in contempt and erred by proceeding to sentence him without first announcing his guilt for contempt.  Upon careful review, we remand this matter for the limited purpose of allowing the sentencing court to correct a clerical error in the sentencing order and affirm Appellant's judgment of sentence in all other respects.

The lower court summarizes the relevant facts as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As discussed **infra**, the order at issue incorrectly states that Appellant was sentenced pursuant to 42 Pa.C.S § 4137(a)(1).

[Appellant] was originally charged with sexual assault crimes. Immediately prior to the jury's entering the courtroom to deliver the verdict, this Court gave explicit instructions to everyone in the courtroom that they could not act out in any way in reaction to the verdict. The jury returned a verdict of not guilty on all counts. Upon the verdict being read in open court, [Appellant] loudly slapped counsel table four times in the presence of the entire courtroom including, but not limited to, the jury, the alleged victim, the prosecutor, defense counsel, the gallery[,] and this Court. This Court convened a summary hearing as to whether [Appellant] was guilty of contempt.

Trial Court Opinion, 6/28/23, 1.

At the start of the summary hearing, the lower court remarked:

THE COURT: Mr. Umoh, let me make a record here. While we were hearing -- right after the jury announced its verdict of not guilty on all counts you started slapping the table very loudly, acting in a manner as though you were, in my view, at some sports stadium, showing total disrespect to the jury, to the victim who was sitting in this room, whether you consider her a victim or not, to the Court. That's not the way we do things in this room.

You have been here multiple days. I told everybody to stay seated for certain decorum. You are a law student and that's the way you acted. It is not all about you. I am going to sentence you to some jail time for your conduct. That's the Court's intention.

N.T. 12/8/22, 2-3. In response, defense counsel spoke to the court about Appellant's entitlement to a hearing on the contempt charge and the court explained that it was providing its outlook at the start of the hearing before any formal ruling was lodged:

[DEFENSE COUNSEL]: Your Honor, I believe he is entitled to a hearing on it.

THE COURT: He is having one right now in the presence of the Court. He is having his hearing.

- 2 -

> [DEFENSE COUNSEL]: Your Honor, you indicated it was a summary contempt proceeding, and I think my client should have an opportunity to express himself.
>
> THE COURT: I'm telling him -- I am giving him fair notice of how I see it before I do anything.
>
> [DEFENSE COUNSEL]: I thought you were making a ruling. I misunderstood you.
>
> THE COURT: That's why I had him sworn in. He can certainly present. You can too.

N.T. 12/8/22, 3.

Appellant, when given an opportunity to speak, apologized for his actions addressed by the court:

> [Appellant]: First off, I want to express my apologies. What I did was completely -- it was unacceptable. Not only, Judge, as a defendant but somebody -- as you said, as a law student -- somebody who plans on in a few years being in front of you as an attorney. I need to hold myself to a higher standard. I was raised better than that. I am better than that in terms of my conduct. And, like you said, in terms of the prosecution and in terms of the victim, regardless of whether I view the victim or not, I need to hold myself to a higher standard, as well as the jury who spent hours deliberating on this verdict and listening to your instructions. I should hold myself to the same standards as everybody in this room in terms of holding myself to the same standards and conduct. There is no excuse. There is no reason. There is no explanation. All I can do is look you in the eyes the best I can and tell you as a man I apologize. And whatever decision you make I will have to hold myself accountable to, because this is a court of accountability.

N.T. 12/8/22, 3-4. His counsel then argued that his acts of slapping the counsel table were involuntary given his circumstances at the time of the

reading of the verdict. *Id.* at 6 ("And I think that it has been bottled up inside him for three years and when he heard those words of not guilty he couldn't control those emotions from coming out."), 8 ("But I think it is -- it has happened as a result of the pressure he has been under in trying to keep himself composed. And he was unable to do that. And I believe the act was involuntary."), 9 ("…it was not a knowing, intelligent or voluntary act on his part but more of an emotional response to his situation and predicament.").

The lower court issued its ruling and sentence at the conclusion of the summary hearing, as follows:

> THE COURT: All right. Mr. Umoh, you took the stand in your own behalf. You did, I thought, a very, very good job. You have a very good lawyer. I'm sure he spent time prepping you. But one of the things you said is, I'm in law school, I'm doing this, I'm doing that. And now your lawyer says, ["]Well, Judge, think of the pressure. He is trying to finish law school.["] Well, if you are so confident about yourself, if you are so understanding of the process because of your unique position of being a law student while in a trial, it is not unreasonable, I think to hold you to a standard that comports with your education, your position. What you did there, you made this -- you turned this into Acrisure Stadium, PNC Park[,] or whatever other arena you want to -- sports arena. You are a sports guy. It is in vogue now for everybody in the NFL -- they score touchdowns, they do dances, they go sit up in the stands with the fans. Even when they are losing 30 to nothing if they happen to score it is, ["]Oh, [l]ook at me, [l]ook at me, [l]ook at me.["] A defensive lineman makes one sack, gets up and does a celebration even if his team is losing by four touchdowns. ["]Look at me. Look at me.["] That's what you did. You did a ["]Look at me. I won. Look at me, I won,["] in the face of the prosecutor, in the face of the victim. Again, that's a term that I am using generically because you were acquitted. But in the face of the jury that struggled with this, that at one point, as you know, was at an impasse. And this is your reaction.

> The last time somebody acted out in this room in an inappropriate way I found them in contempt[,] and I sentenced them [to] 5 to 10 days in the county jail. That's the same sentence you are getting today.
>
> You are hereby sentenced to a sentence of 5 to 10 days in the county jail effective immediately.

N.T. 12/8/22, 10-12; *see also* Sentencing Order, 12/8/22, 1.

Appellant filed a counseled notice of appeal and a request for nominal bond pending appeal on the date of the contempt hearing.[2] On the next day, he filed, through counsel, an amended notice of appeal and a post-sentence motion for reconsideration.[3] This Court later directed counsel for Appellant to show cause as to why the instant appeal should not be quashed as premature, as there was no indication on the trial court's docket that Appellant's post-sentence motion was ever decided. Rule to Show Cause Order, 2/27/23, 1-2. Appellant responded, proffering a copy of an order denying the post-sentence motion on December 12, 2022, and notifying this Court that the trial court had updated its docket to reflect the denial of the post-sentence motion.

---

[2] The trial court's docket and the record certified for this appeal do not indicate a ruling on the bond motion.

[3] Appellant asserted in the post-sentence motion that the lower court did not announce a verdict or make any statement formally finding him in contempt prior to entering the judgment of sentence. Post-Sentence Motion, 12/9/22, ¶ 7. He also alleged that "his conduct did not rise to the level that it 'created an open threat to the orderly procedure of the court,' or showed 'flagrant defiance of the person and presence of the judge before the public that, if not instantly suppressed and punished, demoralization of the court's authority w[ould] follow.'" *Id.* at ¶ 10, *citing Commonwealth v. Moody*, 125 A.3d 1, 9 (Pa. 2015), *quoting Commonwealth v. Garrison*, 386 A.2d 971, 976 (Pa. 1978) (plurality).

Response to Rule to Show Cause Order, 3/7/23, 1-2. As a result, this Court discharged the rule to show cause order. Order, 3/9/23, 1-2.

Appellant presents the following questions for our review:

1. Did the trial court err in finding Appellant in summary direct criminal contempt where there is no evidence that Appellant acted with intent to obstruct the proceedings, or that Appellant's actions obstructed the administration of justice when he spontaneously hit counsel table four times in quick succession after being fully acquitted of rape charges?

2. Whether the trial court erred by sentencing Appellant without pronouncing a verdict or making a finding of guilt on the record?

Appellant's Brief at 2.[4]

In his first issue, Appellant challenges the sufficiency of the evidence for contempt. Appellant's Brief at 8-16. He concedes that his conduct constituted misconduct in the presence of the trial court, but he argues that the evidence did not demonstrate that he acted with the intent to obstruct the proceedings by repeatedly slapping the counsel table upon the reading of the acquittal verdict in his prior criminal matter. *Id.* at 10-13. In the alternative, he argues that the evidence did not support that his actions obstructed the administration of justice. *Id.* at 13-16.

_____

[4] Although the record certified for this appeal does not contain an order directing the filing of a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), the trial court's docket indicates that a Rule 1925(b) order was issued on May 15, 2023, and Appellant's Rule 1925(b) statement indicates that it was filed "pursuant to Pa.R.A.P. 1925(b) and this Court's Order." Rule 1925(b) Statement, 6/5/23, 1. Accordingly, we find timely compliance for purposes of Rule 1925(b).

"The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Edwards***, 177 A.3d 963, 969 (Pa. Super. 2018) (citation omitted). Upon sufficiency review, we evaluate "whether viewing all the evidence admitted at trial [ ] in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Stiles***, 143 A.3d 968, 981 (Pa. Super. 2016) (brackets in original; citation omitted). This Court may not reweigh the evidence and substitute our own judgment for that of the finder of fact. ***Id.*** (citation omitted). "Moreover, a conviction for criminal contempt requires proof beyond a reasonable doubt." ***Commonwealth v. Kolansky***, 800 A.2d 937, 940 (Pa. Super. 2002) (citation omitted).

"In reviewing an appeal from a contempt order, we place great reliance on the discretion of the trial judge. We review the record to determine if the facts support the trial court's decision and will reverse the trial court only if there is a plain abuse of discretion." ***In re Arrington***, 214 A.3d 703, 707 (Pa. Super. 2019) (citations and internal quotation marks omitted). This Court has previously stated:

> The ability to raise a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy. In

connection with this sentiment, however, this Court has also noted that a trial court should not use the drastic sanction of finding a person in criminal contempt when a lesser measure will suffice.

*In re C.W.*, 960 A.2d 458, 466 (Pa. Super. 2008) (citation omitted).

As we first address the sufficiency of the evidence, we note that the trial court's sentencing order indicates that Appellant was convicted of "Contempt/Misbehavior in Presence of Court" pursuant to 42 Pa.C.S. § 4137(a)(1). Order 12/8/22, 1. The citation to Section 4137 appears to be a clerical error as that statute only pertains to the contempt powers of magisterial district judges. Appellant, on the other hand, was convicted of contempt by the Court of Common Pleas of Allegheny County, and thus his contempt conviction should have been listed on the sentencing order as a violation of 42 Pa.C.S. § 4132, which addresses contempt power of "the several courts of this Commonwealth." Assuming *arguendo* that Appellant's instant claims do not mandate a reversal of the charge at issue, we would need to remand this matter for the limited purpose of allowing the sentencing court to correct its order to properly reflect the contempt as a violation of Section 4132. *See, e.g., Commonwealth v. Johnson*, 2020 WL 7692793, *2 (Pa. Super., filed Dec. 28, 2020) (remanding for the limited purpose of a correcting a sentencing order where the Court of Common Pleas of Philadelphia County stated that it was convicting a defendant of contempt in violation of 42 Pa.C.S. § 4137(a)(1)) (unpublished memorandum cited for its persuasive value). In turn, we analyze Appellant's sufficiency claim as if his conviction was properly identified as a violation of 42 Pa.C.S. § 4132.

Appellant reviews in his brief whether the evidence was sufficient to support contempt under 42 Pa.C.S. § 4132(3), which addresses "[t]he misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."[5] 42 Pa.C.S. § 4132(3). To sustain a conviction for direct criminal contempt under Section 4132(3), "there must be proof beyond a reasonable doubt: (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice." *Commonwealth v. Williams*, 753 A.2d 856, 861 (Pa. Super. 2000). The last two elements are the focus of Appellant's sufficiency argument. Appellant's Brief at 11-16. He argues that the conduct that was the focus of the contempt conviction was involuntarily committed in an "emotional, celebratory outburst," it was not committed with any intent (let alone an intent to obstruct the proceedings at his former trial), and it "f[ell] far short of significantly disrupting the proceedings." *Id*.

As for the *mens rea* element, we disagree with Appellant. As we have previously held, "[t]here is wrongful intent if the contemnor knows or should reasonably be aware that his conduct is wrongful." *Williams*, 753 A.2d at 862, *citing In re Adams*, 645 A.2d 269, 272 (Pa. Super. 1994), *appeal denied*, 653 A.2d 1225 (Pa. 1994); *accord Commonwealth v. Meehan*,

---

[5] While the trial court did not address any particular subsection of Section 4132 during the summary contempt hearing, the court only addresses the sufficiency of the evidence with respect to 42 Pa.C.S. § 4132(3) in its advisory opinion. Trial Court Opinion, 6/28/23, 3-4. The parties thereafter only reviewed the sufficiency of evidence with respect to Section 4132(3) in their briefs and their arguments before this panel.

235 A.3d 1284, 1290 (Pa. Super. 2020); **Arrington**, 214 A.3d at 707; **Commonwealth v. Mutzabaugh**, 699 A.2d 1289, 1292 (Pa. Super. 1997). In this instance, Appellant's statement to the trial court readily supported that he was aware that his conduct was wrongful. He expressed "apologies" for the actions and admitted that it was "completely … unacceptable." N.T. 12/8/22, 3. Moreover, he told the court that he needed to "hold [himself] to a higher standard" and admitted that he "was raised better than that." **Id.** From these admissions, the trial court as fact finder could reasonably conclude that Appellant knew or should have been aware that his pounding on the counsel table – in direct defiance of the trial court's order to refrain from "acting out" – was wrongful conduct. It was also reasonable to infer from Appellant's experience as a law student that Appellant knew or should have been aware that his defiance of the court's directive not to act out was wrongful conduct. **See, e.g., Arrington**, 214 A.3d at 708 (noting that an appellant's experience as a probation officer who would often appear in court permitted the reasonable inference that the defendant knew or should have known that his defiance of a court's order to put away his cellphone was wrongful conduct, supporting the third element of contempt under Section 4132(3)). Accordingly, the evidence was sufficient to support the third element of contempt under Section 4132(3).

As for the fourth element of contempt under Section 4132(3) – actual obstruction of the administration of justice – there needed to be proof that Appellant's conduct significantly disrupted judicial proceedings. **Williams**,

753 A.2d at 863. To satisfy that condition, there had to be "actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority." **Id.** "The requisite 'significant disruption' can be met in varied in circumstances, including those occurring 'even [after] the judicial proceeding has concluded.'" **Commonwealth v. Outlaw**, --- A.3d ---, 2023 WL 8441712, *3 (Pa. Super., filed Dec. 6, 2023), **citing Commonwealth v. Falana**, 696 A.2d 126, 129 (Pa. 1997) (holding that evidence was sufficient for contempt where a defendant, upon being removed from a courtroom after sentencing, told a victim, "I'll be out one day"); **see also Williams**, 753 A.2d at 859 (holding that evidence was sufficient to sustain contempt for conduct that occurred after a court had finished sentencing where a defendant, as he was being led from the courtroom, "apparently elected to express his dissatisfaction" with his sentence "by raising his middle finger and stating, 'F--k You'" to the judge).

Appellant argues that the record was "devoid of any evidence that [his] slapping the table in any way obstructed the verdict," and notes that, following "the outburst," he "was taken into custody, [and] the court continued on to poll the jury and conduct business as usual, without any sort of prolonged pause or need to bring the courtroom to order." Appellant's Brief at 13-14. Even if we agree with him on those points, Appellant fails to consider that criminal contempt is available for "such conduct as created an open threat to the orderly procedure of the court and such flagrant defiance of the person and presence of the judge before the public that, if not instantly suppressed

and punished, demoralization of the court's authority will follow." ***Outlaw***, --- A.3d ---, 2023 WL 8441712 at *5 (citations omitted).

Our Supreme Court has concluded that a challenge to "the preservation of the court's authority" is a "significant disruption in [a] judicial proceeding[ ]" because it "obstructs the efficient administration of justice and demean[s] the court's authority." ***Falana***, 696 A.2d at 129; ***accord Arrington***, 214 A.3d at 708. In ***Arrington***, we noted that while an appellant's defiance of a court's directive to stop using a cellphone in the courtroom did not cause significant delay in the judicial proceeding, the defiance itself was a challenge to the court's authority that satisfied the fourth element for contempt under Section 4132(3).[6] ***Arrington***, 214 A.3d at 708.

Appellant Umoh's pound-on-the-table outburst in defiance of an order not to "act out" met the fourth element for contempt in the same manner as the defiant cellphone use in ***Arrington***. His actions demonstrated disrespect for the court and its command of its courtroom and brazenly repudiated the court's authority to call for decorum in its courtroom. This challenge to the court's authority amply sustained the obstruction element even if there was no prolonged interruption of the court's conclusion of Appellant's criminal trial. ***See Outlaw***, --- A.3d ---, 2023 WL 8441712 at *5 (holding that, even assuming that there was no discernable break in a suppression proceeding

---

[6] While this Court reviewed the sufficiency of evidence pursuant to Section 4132(3) in ***Arrington***, the trial court in that case, like the trial court in the instant case, erroneously issued the contempt order pursuant to 42 Pa.C.S. § 4137(a)(1). ***Arrington***, 214 A.3d at 706 n.2.

caused by Outlaw's act of standing up and yelling, "The judge is a cocksucker," upon an announcement of findings on a suppression motion, the evidence was sufficient for contempt under Section 4132(3) because the action undermined the court's authority and did obvious harm to the court's ability to conduct an orderly proceeding).

In our extensive research into our prior contempt decisions for this matter, we have not uncovered a similar occasion in any precedential opinion where we have addressed contempt resulting from defiant celebration upon the announcement of a verdict that is done in violation of a verbal court order. We sanction the use of contempt in these contexts because the reading of a verdict is a solemn event at a time of high tension when one person's celebration in the courtroom, resulting from bottled emotions, can be seen as a triggering event for intemperate responses from others with opposed bottled emotions. Safety for jurors, parties, witnesses, attorneys, court officers, and members of the public audience must be maintained through these tension-filled moments. The duty for ensuring that safety, while also protecting a defendant's Sixth Amendment right to an open public trial, remains with the trial court. *See Commonwealth v. Jordan*, 212 A.3d 91, 102 (Pa. Super. 2019) (noting it "is the responsibility of the court to maintain not only the control but also the security of the courtroom") (citation omitted). When a court verbally orders the persons present in their courtroom to maintain decorum upon the reading of a verdict, the order should be heeded by all and enforced through summary contempt proceedings when necessary. We

recognize that the appropriateness of contempt in these circumstances "gives credence to a judge's status as commander in chief over his or her courtroom." **Kolansky**, 800 A.2d at 942 (citations omitted).

In his second issue, Appellant asserts that the trial court erred by not announcing a guilty verdict for contempt before sentencing him. Appellant's Brief at 16-20, **citing** Pa.R.Crim.P. 454(D) ("The verdict and sentence, if any, shall be announced in open court immediately upon the conclusion of the trial, except as provided in paragraph (E)."); Pa.R.Crim.P. 621(A) ("When a jury trial is waived, the trial judge shall determine all questions of law and fact and render a verdict which shall have the same force and effect as a verdict of a jury."). Upon careful review, we discern that we are unable to address the merits of this claim due to lack of preservation.

Appellant did not preserve the instant claim after the imposition of his sentence at the conclusion of his summary contempt hearing. N.T. 6/29/23, 12-13. He only addressed the issue of an unannounced verdict for the first time in a post-sentence motion that was filed on the day after sentencing. Motion to Reconsider, 12/9/22, ¶ 7 ("Prior to entering the judgment of sentence, this Honorable Court did not announce a verdict or make a statement formally finding Defendant in contempt."). Even though the trial court later issued an order denying the post-sentence motion, the trial court was unable to entertain that motion because Appellant had already filed an initial notice of appeal on the same day as his sentencing hearing. Notice of Appeal, 12/8/22. **See Commonwealth v. Klein**, 781 A.2d 1133, 1135 (Pa.

2001) (stating that "where a Notice of Appeal has been filed, the trial court cannot act further in the matter"); **Commonwealth v. Aaron**, 615 A.2d 735, 740 (Pa. Super. 1992) (holding that a trial court properly refused to consider a post-verdict motion concerning after-discovered evidence when an appeal was already pending); Pa.R.A.P. 1701(a) (except as otherwise prescribed, after an appeal is taken, the trial court may no longer proceed further in the matter).

By filing a counseled notice of appeal immediately after sentencing, Appellant divested the trial court of any jurisdiction to consider any claims that could be raised for the first time in a post-sentence motion.[7] Any issue raised for the first time after this appeal was filed – except for challenges to the sufficiency of the evidence for contempt or the legality of the sentence – are waived and not properly before this Court. **See Commonwealth v. Santiago**, 980 A.2d 659, 666 n.6 (Pa. Super. 2009) ("issues, even those of a constitutional dimension, are waived if not raised in the trial court") (citation omitted); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **see also**

---

[7] In **Commonwealth v. Cooper**, 27 A.3d 994 (Pa. 2011), our Supreme Court held that a premature *pro se* notice of appeal did not divest a trial court of jurisdiction to act upon a timely post-sentence motion that was later filed by a defendant's counsel. 27 A.3d at 1006-07. The current case can be distinguished from **Cooper** on the basis that there was no interplay of *pro se* and counseled actions following the imposition of the sentence in this matter. Counsel in this case filed both the notice of appeal and the subsequent post-sentence motion.

*Commonwealth v. Cramer*, 195 A.3d 594, 609 (Pa. Super. 2018) (claim of trial court error in connection with a motion filed after the filing of a notice of appeal was without merit where the trial court no longer had jurisdiction to consider the motion). Because Appellant failed to preserve his instant claim with the trial court prior to filing his counseled notice of appeal, we are unable substantively review it.[8]

In this matter, the evidence was sufficient to support criminal contempt under 42 Pa.C.S. § 4132(3) where Appellant, in defiance of a court order to not "act out" upon the reading of a verdict, slapped a counsel table four times. Appellant waived his challenge to the absence of a reading of his contempt verdict in open court where he raised the claim for the first time in a counseled post-sentence motion that was filed a day after counsel had already filed a notice of appeal. While the claims raised on appeal provide no basis for relief, we must remand for correction of Appellant's sentencing order where the contempt conviction is incorrectly listed as a violation of 42 Pa.C.S § 4137(a)(1). The trial court should reissue a sentencing order reflecting that the contempt conviction was a violation of 42 Pa.C.S. § 4132(3).

---

[8] Notably, all the cases Appellant cites in support of his claim pre-date the adoption of the first version of Pa.R.A.P. 302 which provides for the general rule pertaining to issue preservation. The rule was first adopted on November 5, 1975, and became effective on July 1, 1976. The most recent opinion that Appellant cites in support of his claim was issued on September 23, 1974. Appellant's Brief at 16-20, *citing, inter alia, Commonwealth v. Wenyon*, 326 A.2d 633 (Pa. Super. 1974).

Case remanded for correction of clerical error in sentencing order. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/14/2024