J-S05042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY BROWN :
:
Appellant : No. 979 EDA 2024

Appeal from the Judgment of Sentence Entered March 21, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003913-2021

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY BROWN :
:
Appellant : No. 980 EDA 2024

Appeal from the Judgment of Sentence Entered March 21, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003914-2021

BEFORE:   PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 8, 2026**

Anthony Brown appeals from his judgments of sentence imposed

following a jury finding him guilty of murder of the first degree and possessing

an instrument of crime (PIC) at case number 3913-2021,[1] and guilty of murder

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a) (first-degree murder) and 907(a) (PIC).

of the first degree, conspiracy to commit murder of the first degree, and PIC

at case number 3914-2021.[2] Brown was principally sentenced to two

mandatory, consecutive terms of life imprisonment without the possibility of

parole (LWOP). Upon review, we remand this matter for the limited purpose

of allowing the trial court to correct a patent and obvious error in its sentencing

order at 3914-2021, but affirm Brown's judgments of sentence in all other

respects.

The trial court cogently summarized this case, as follows:

In the evening hours of February 28, 2020, Alexis Ellison, the sole
tenant of 2087 East Clementine Street, [Philadelphia,
Pennsylvania,] arrived home where she was greeted by an
acquaintance who notified her that he had heard shots coming
from her house and that he believed her boyfriend "BB" was
inside. Ellison subsequently unlocked the front door to find her
boyfriend, Brandon White, lying dead on the living room floor.
Ellison shut the door and ran up the street to call 911 from a
neighbor's house. Police shortly arrived on scene and[,] upon
arrival and entry into 2087 East Clementine Street, they located
two deceased [] black males inside the property. Police later
identified the first male lying in the middle of the living room as
White. Moving to the kitchen, police located a second male
identified as Javon Skinner. Both men were pronounced dead on
scene at 6:33 p.m. At approximately 7:00 p.m., Ellison was
transported from her home to [the] Philadelphia Police[
Department's] Homicide [U]nit['s office] for questioning.

At the Homicide Unit [office], Ellison consented to a search of her
phone. Detectives were able to extract information from her call
log[,] which detailed her incoming and outgoing calls on February
28, 2020. Reports showed she received an incoming Face[T]ime
call at 6:23 p.m., from a number subscribed to [Brown]. Three

_____

[2] 18 Pa.C.S. §§ 2502(a) (first-degree murder), 903 (conspiracy), and 907(a)
(PIC).

minutes later at 6:26 p.m.[,] Ellison placed the call to 911. Detectives subsequently recovered video surveillance from the area showing [Brown] and his codefendant, Ahmad Thomas, entering 2087 East Clementine Street and exiting shortly after [the] decedents are believed to have been shot and killed.

Police eventually discovered that [Brown] had fled to South Carolina, wherein he was shortly thereafter arrested. In January 2021, [Brown] was successfully extradited to the custody of the Philadelphia Police Department. [Brown] was subsequently arrested and charged with, *inter alia*, [two counts of murder of the first degree].

After a mistrial in [Brown's] first trial, held in September of 2022, [Brown's] second trial commenced on March 11, 2024. The Commonwealth presented evidence as well as the testimony of eight [] witnesses as part of its case-in-chief against [Brown]. Such witnesses from the Philadelphia Police Department included Former Crime Scene Unit (CSU) Officer and [D]etective, Steven Berardi, Firearms Identification Unit (FIU) Officer Paul Ward, and lead Detective Orlando Ortiz. [City of Philadelphia M]edical [E]xaminer Dr. Lindsay Simon[] and Ellison[] also testified.

At trial, Philadelphia Police Officer Ward, a member of [the] FIU in 2020, testified that he analyzed the ballistics recovered in this case. This [analysis] included the sixteen [] fired cartridge casings (FCCs), which he concluded were all fired from the same .40 caliber Smith & Wes[s]on firearm, and the other seven [] FCCs, which he determined were all fired from the same 9-millimeter Luger firearm. Additionally, he matched the two calibers to the live rounds of ammunition that were recovered from Thomas's home.

Detective Berardi, a member of [the] CSU in 2020, testified to recovering and cataloging the evidence recovered from the area around the crime scene[.] This [work] included [the] recovery of the ballistic evidence, specifically the FCC[s], retrieved from around White and Skinner.

The Commonwealth also [called] Detective Ortiz, lead detective in the case, [to] testify to, amongst other things, how the investigation unfolded and resulted in the arrests of [Brown] and his co-defendant[.] This [investigation] included the interviewing of Ellison as well as what the search into her phone revealed.

Detective Ortiz further testified [regarding] the several hours of recovered video surveillance which captured the events leading up to, during, and after the time [at] which White and Skinner were murdered. Subsequently, the footage, [within] which [] Thomas identified [] himself [] during an interview, tied both [Brown] and Thomas to the murder. Additionally, Dr. Simon testified for the Commonwealth and summarized the autopsies she performed on both White and Skinner.

Ellison, over the span of two days, testified to finding White and Skinner dead in her house, her relationships with [Brown] and White, conversations with [Brown] both before and after [Brown] and Thomas killed White and Skinner, and the information that she gave detectives that served as the starting point of their investigation.

The Commonwealth and [Brown's] counsel stipulated that [Brown] did not have a license to carry a firearm on February 28, 2020. They also stipulated to the testimony of Latoya Sharper, [Brown's] aunt, who would have testified to [Brown's] reputation in the community.

The Commonwealth and [Brown's] counsel [also] stipulated to the testimony of Michael McCandless, a longstanding employee of Vacant Property Security. McCandless would have testified that on February 28, 2020, every point of entry, and the windows, in the vacant property listed at 2085 East Clementine Street was secured and unwanted entry would have only been possible by means of force.

The Commonwealth and [Brown's] counsel [additionally] stipulated to the testimony of Andrea Williams, an expert in fingerprint identification and analysis with the Philadelphia Police Department Latent Print Unit. Williams would have testified that she examined the latent print cards from 2087 East Clementine Street[] provided by Detective Berardi. She would have affirmed that all prints examined were found to be inconclusively associated with [Brown].

Trial Court Opinion, 6/26/25, at 2-5 (record citations and name titles and unnecessary first names omitted).

Brown and Thomas were tried together, both at the mistrial and the subsequent trial. Ultimately, after hearing several days of evidence and argument, the jury in the second trial found Brown guilty of, *inter alia*, the aforementioned two counts of murder of the first degree, resulting in two consecutive LWOP sentences.[3]

After sentencing, Brown filed post-trial motions, which were denied. Thereafter, Brown filed a timely notice of appeal and correspondingly submitted a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Brown challenges the weight and sufficiency of the evidence at each of his first-degree murder convictions and the admissibility of a certain portion of Detective Ortiz's testimony.[4] **See** Appellant's Brief at 7-8. Although

_____

[3] Brown received two additional terms of one-to-two years of incarceration for the PIC offenses, each to be served concurrent with their respective LWOP sentences.

[4] Brown's statement of questions involved contains an additional issue regarding the admissibility of Ellison's *crimen falsi* convictions, **see** Appellant's Brief at 8, but the brief contains no additional references to this contention. Therefore, this argument is waived. **See Commonwealth v. Heggins**, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived"). Separately, and more broadly, we note our displeasure with the organizational structure of Brown's brief. It is written in a manner that reads like an outline, replete with indented and individually lettered/numbered lists, many of them single sentences, rather than in paragraph format. Moreover, the argument section contains only seven citations to authority across three distinct issues, most serving to simply describe our applicable standards of review. This lack of development has impeded our review. We note that this Court has previously addressed, in multiple unpublished memoranda, prior examples of
*(Footnote Continued Next Page)*

his brief places his weight claim before his sufficiency claim, we address the sufficiency claim first. **See Commonwealth v. Toritto**, 67 A.3d 29, 33 (Pa. Super. 2013) (*en banc*) ("Because a successful sufficiency of the evidence

_____

Brown's counsel, George S. Yacoubian, Jr., Esquire, offering deficient developments of arguments in his briefs filed for our review. **See Commonwealth v. Watts**, 2025 WL 1604565, *2 (Pa. Super., filed June 6, 2025) (unpublished memorandum; 2428 EDA 2024) (noting that counsel's brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), contained "citations to the pertinent standard of review, but little to no additional citations to legal authorities supporting his arguments"); **Commonwealth v. Moore**, 2025 WL 3162145, *3 (Pa. Super., filed Nov. 12, 2025) (unpublished memorandum; 1418 EDA 2024) (finding another **Anders** brief filed by counsel deficient where counsel  failed "to state his reasons for concluding why the appeal [was] frivolous" and did not "articulate the relevant facts of record, controlling case law, and/or statutes on point that led him to conclude that the appeal [was] frivolous"); **Commonwealth v. Sims**, 2024 WL 2153505, *3 (Pa. Super., filed May 14, 2024) (unpublished memorandum; 1695 EDA 2023) (describing another **Anders** brief from counsel as deficient where counsel offered no specific discussion of claims that were raised in a Rule 1925(b) statement, or any explanation as to why those issues were frivolous); **Commonwealth v. Boozer**, 2019 WL 5655295, *4 (Pa. Super., filed Oct. 31, 2019) (unpublished memorandum; 492 EDA 2018) (finding another **Anders** brief by counsel to be deficient, noting that counsel had "done nothing more than present conclusory statements supporting affirmance" of a verdict, and remanding for the appointment of new counsel); **see also Commonwealth v. Watts**, 2026 WL 1292529, *2 n.3 (Pa. Super., filed May 8, 2026) (unpublished memorandum; 2429 EDA 2024) (noting that, after our prior finding of deficient briefing in Watts's appeal by counsel, counsel filed a new **Anders** brief that "remained substantively deficient," and, as a result, we vacated counsel's appointment and remanded for the appointment of new counsel). For the benefit of our Court's ease of review, we insist that counsel adhere to the briefing requirements addressed in our appellate rules of procedure. **See** Pa.R.A.P. 2101 ("Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and if the defects in the brief . . . are substantial, the appeal . . . may be quashed or dismissed"); Pa.R.A.P. 2119(a) (a brief's argument section "shall have . . . such discussion and citation of authorities as are deemed pertinent").

claim warrants discharge on the pertinent crime, we must address this issue first."); **see also Commonwealth v. Ford**, 141 A.3d 547, 552 (Pa. Super. 2016) (addressing challenge to sufficiency prior to weight although the appellant presented the issues in reverse order).

As to our standard of review for sufficiency of evidence challenges, we employ the following:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

**Commonwealth v. Haahs**, 289 A.3d 100, 104 n.2 (Pa. Super. 2022) (citation omitted).

The elements of first-degree murder are as follows: "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." **Commonwealth v. Padilla**, 80 A.3d 1238, 1244 (Pa. 2013); **see also** 18

J-S05042-26

Pa.C.S. § 2502(a).

Brown's sufficiency argument is limited to two sentences. *See* Appellant's Brief at 18. Brown simply argues that he "was not responsible for the killing." *Id.* We find that the trial court's opinion comprehensively refutes Brown's assertion and adopt it as our own. *See* Trial Court Opinion, 6/26/25, at 9-21.

> In particular, we emphasize the following:
>
> The Commonwealth presented ample evidence for the jury to find [Brown] entered 2087 East Clementine Street despite the fact that the property's front door was not seen on video, nor can [Brown] be seen entering the home. Based on his personal knowledge of the exterior of Ellison's residence, Detective Ortiz testified he was certain the trashcan seen on video chained to the railing of 2087 East Clementine Street was in the same [position] that he observed when he arrived on scene and that it exactly depicts where the trashcan was located on February 28, 2020. Video surveillance recovered from the surrounding area showed [Brown], wearing the same distinct clothing used to identify him in a surveillance video clip, and Thomas walking up the stairs of 2087 East Clementine Street, having to pass the trashcan on the top step. The two men are presumed to be inside the residence from 3:53 p.m. to 3:59 p.m. until [Brown and Thomas] are both seen exiting the residence, having to again pass the trashcan as they walk down the steps. [Brown] is seen on video walking back up to the top step of the residence and down again before he meets the other males in the street and depart[s] from the scene.

*Id.* at 14 (record citations and name titles omitted).

> The court continued to tether Brown to the location of the crime:
>
> [S]urveillance video evidence showed that [Brown and Thomas] staked out and followed White and Skinner from the corner store to 2087 East Clementine Street where [Brown] and Thomas killed them. [Brown is] seen wearing white sneakers and sweatpants with white lettering on his pant leg throughout the entirety of [the] surveillance video [and] is seen on video ascending up the steps

- 8 -

to the trash can located at the top step of 2087 East Clementine Street, followed by Thomas. Using the trashcan at the top of the steps in front of the entry door of 2087 East Clementine Street as a landmark, once [Brown] and Thomas pass the trash can[,] they fade off camera where they cannot be seen on camera from 3:53 p.m. to 3:59 p.m. until they are both seen coming down the steps of 2087 East Clementine Street, passing the trashcan before [Brown briefly] walks back up and down the stairs. Detective Ortiz estimated the homicides occurred [between] 3:51 p.m. and 4:01 p.m. on February 28, 2020.

*Id.* at 20 (record citations and name titles omitted).

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, there was enough presented to, at a minimum, circumstantially demonstrate that Brown committed the two homicides, especially when juxtaposed against the preexisting relationships between both Brown and White as well as Brown and Ellison, and the evidence showing that White's cell phone ceased communications just before Brown and Thomas's entrance into the home. ***See, e.g.***, *id.* at 17 (describing one of Brown and White's interactions over Facebook Messenger, two days before the murders, involving discussion of guns, drugs, and Ellison); *id.* at 14 (summarizing a portion of Detective Ortiz's testimony as demonstrating that "White's phone records did not have any outgoing social media messages, calls[,] or text activity from his phone after 3:51 p.m.").

We also note that, although some of the evidence is circumstantial in this case, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Gause***, 164 A.3d 532, 541 (Pa.

Super. 2017) (*en banc*). Despite Brown's assertion, the Commonwealth was not required to show direct proof of him, *inter alia*, "holding, carrying, or otherwise concealing firearms[.]" ***But see*** Appellant's Brief at 18. Accordingly, with the varied evidence linking him to the crime scene on the date of the murders, there was sufficient evidence for the fact-finder to conclude, beyond a reasonable doubt, that Brown was guilty of, *inter alia*, two counts of murder of the first degree.[5] Thus, he is due no relief.

For challenges to the weight of the evidence, wholly distinct from a sufficiency claim, we begin by noting our standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

---

[5] Although Brown raises no argument as to the sufficiency of evidence of the elements vis-à-vis his singular conspiracy and two PIC convictions, we would find their evidentiary support equally sufficient, predicated on much of the same circumstantial evidence, which established a concerted effort between Brown and Thomas to kill White as well as the criminal intentions Brown had in relation to his possession of the weapon used to kill both Skinner and White.

At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. Issues of witness credibility include questions of inconsistent testimony and improper motive. A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (quotation marks and citations omitted).[6]

Brown's brief summarizes the evidence against him at his trial, *see* Appellant's Brief at 12-17, and then suggests, *inter alia*, that the Commonwealth adduced nothing that actually connected him to the murders. Brown argues that

[d]espite [there being] hours of raw video footage recovered by the police, [he and Thomas] were never seen holding, carrying, or otherwise concealing firearms; [he] was never seen entering or exiting the house; there were no instinctual reactions by any civilian witnesses on Clementine Street to 23 shots fired from two large-caliber weapons on the first-floor; no forensic evidence linked [him] to the crime scene; and the search of [his] property yielded no physical evidence linking him to the murders.

*Id.* at 17. As such, he alleges that "the verdicts for first-degree murder were so contrary to the evidence that it should shock our sense of justice." *Id.* We disagree and find the court, to the extent Brown even argued a cognizable

_____

[6] Brown's post-sentence motions did not motion for a new trial, consistent with Pennsylvania Rule of Criminal Procedure 607(A) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial[.]"), but instead erroneously sought a judgment of acquittal. *See* Post-Sentence Motions, 3/22/24, at ¶ 3.

weight-based claim, did not abuse its discretion in denying Brown relief on his weight claim.

Preliminarily, Brown's weight challenge, which is predicated on an argument that he has not been shown to be connected to the murders, can largely be characterized as a sufficiency challenge. *See Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa. Super. 2017) ("[A] true weight of the evidence challenge *concedes that sufficient evidence exists to sustain the verdict* but questions which evidence is to be believed.") (emphasis added and citation omitted). Other than an undeveloped suggestion that pedestrians walking past the murder scene, identifiable in a video played to the jury, should have reacted to loud and repetitive gunfire that corresponded with the Commonwealth's position as to the time in which the murders occurred, *see* Appellant's Brief at 15-16, Brown does not challenge the believability of the evidence that was employed against him or concede that the same evidence could have sustained the murder verdicts. Instead, he maintains that the Commonwealth failed to show a demonstrable nexus to his involvement in the murders.

Nevertheless, in a direct refutation of Brown's supposition that there was no evidence tying him to the homicides,[7] the court, likely guided by his

_____

[7] This evidence was discussed in more detail in addressing his sufficiency claim, *supra*.

- 12 -

erroneous framing of his weight-of-the-evidence claim, *see* Trial Court Opinion, 6/26/25, at 26 (remarking that Brown "now effectively challenges if[] there was sufficient evidence for the jury to convict[]"), was satisfied there was enough evidence presented for a reasonable inference that Brown perpetrated these crimes:

> D[octor] Simon testified White and Skinner both died from multiple gunshot wounds and ruled the manner of their deaths as homicide. Philadelphia [b]allistics expert, Officer Ward[,] and Philadelphia Homicide Detective Ortiz provided testimony supporting Dr. Simon's conclusion. Officer Ward testified that of the ballistic evidence collected from the scene, he recovered only . . . fired cartridge casings [that had been] fired from a .40 caliber Smith [& Wesson] firearm and a 9[-]millimeter Luger firearm. Microscopic comparison confirmed all [twenty-three total FCCs] recovered were . . . fired from the same [two firearms]. . . . The two models of [FCCs] recovered from inside 2087 East Clementine Street confirm Detective Ortiz's theory that there were two shooters inside on February 28, 2020. Furthermore, police also recovered identical .40 caliber and [9-]millimeter bullets from Thomas's residence at 2109 East Clearfield Street, where [Brown] and Thomas are seen on surveillance camera entering minutes before White and Skinner are subsequently killed.

> The Commonwealth also presented video surveillance evidence substantiating the fact that the murders were committed by two individuals inside the home. Footage recovered from nearby showed two individuals, one being [Brown] identified by Philadelphia Police Officer[] Malik Carr[] and the second, Thomas, who identified himself in the video to police, ascending the steps of 2087 East Clementine Street where they entered the home. Detective Ortiz testified that the murders occurred at some time between 3:51 p.m. and 4:01 p.m. on February 28, 2020. The time of the murders was affirmed from [surveillance] footage that show[s] [Brown] and Thomas fading off camera after they ascend up the stairs of 2087 East Clementine Street[] and by evidence that White made his last outgoing call from his cell phone [] at 3:51 p.m. [Neither] White nor Skinner were []ever seen again on video nor were they seen exiting 2087 East Clementine [S]treet any time after 3:51 p.m.

*Id.* at 26-28 (record citations and name titles and unnecessary first names omitted).

Notwithstanding the court's quasi-sufficiency analysis, it also, in that same section of its opinion, wrote that "[t]he jury weighed the testimony and evidence presented by the Commonwealth's eight [] witnesses . . . and[, upon consideration of these witnesses, the court] concluded that the jury's verdict did not shock the judicial conscience[.]" *Id.* at 26. We are convinced that the trial court properly exercised its discretion in determining that the verdicts were not against the weight of the evidence. Although Brown has obfuscated his weight claim, given that he was required to concede that the elements of his homicide convictions had been sufficiently proven, he has failed to challenge the veracity of any testimonial or videographic evidence. Simply put, because of his lack of challenge as to the believability of any of the evidence employed against him, there is nothing evident in the record or provided by Brown in his appellate brief to demonstrate that the court abused its discretion in concluding that the jury's verdicts did not shock its judicial conscience. Therefore, the court did not abuse its discretion in denying Brown relief on this basis.

Finally, at Brown's last issue, which suggests that the court erred by allowing certain testimony of Detective Ortiz, we emphasize that, broadly speaking, the admission of evidence is within a trial court's sound discretion and will only be reversed where the court clearly abuses that discretion. ***See***

- 14 -

*Commonwealth v. Wilson*, 273 A.3d 13, 19 (Pa. Super. 2022). An abuse of discretion occurs only where the judgment is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will." *Id.* (internal citation omitted). It is not enough to persuade an appellate court that, if given the opportunity, it would have reached a different result; an appellant *must* show the trial court abused its discretionary power. *See Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019). Even if an error had occurred, evidence issues are still subject to harmless error, and "an evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict." *Commonwealth v. Vance*, 316 A.3d 183, 192 (Pa. Super. 2024) (citation omitted).[8]

_____

[8] The following principles guide our harmless error analysis:

> an error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error could not have contributed to the verdict. Guidelines for determining whether an error is harmless include: (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was *de minimis*; (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) whether the evidence of guilt was so overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict.

*(Footnote Continued Next Page)*

Brown contends that his entire trial strategy was "premised on the compilation video [offered into evidence by the Commonwealth] that showed no instinctual reactions from any civilians or vehicles to [twenty-three] loud, large-caliber successive rounds of ammunition fired on the first[]floor of a row home in a residential neighborhood during the middle of the afternoon." Appellant's Brief at 19 (emphasis omitted). Brown avers that Detective Ortiz's testimony admitted that there was no reaction from anybody outside. **See id.** However, Brown takes issue with Detective Ortiz's statement that he interviewed someone who heard shots being fired. **See id**.

Brown claims that Detective Ortiz's statement regarding his interview with a potential witness was hearsay because it was being offered for the truth of the matter asserted, i.e. "that someone did hear shots during the time in question[.]" **Id.** at 20. Brown's position was that "the shots could not have been fired during the time in question because not a single pedestrian or vehicle in the compilation video reacted to the [twenty-three] shots being fired[.]" **Id.** As such, Brown asserts that he was unfairly prejudiced by the admission of that testimony evidence. We disagree.

After reviewing the record, we again find the court's resolution of Brown's claim, to the extent it delves into a harmless error analysis,

---

**Commonwealth v. Adams**, 39 A.3d 310, 322 (Pa. Super. 2012) (cleaned up).

appropriately demonstrates that he is not entitled to relief:

> [The court] properly admitted Detective Ortiz's testimony as evidence to the thoroughness of the police's investigation rather than relying on the statement to establish the truth of the fact that someone heard gunshots in the area around the time that the murders occurred.[9] [The court] properly admitted Detective Ortiz's testimony because it did not state "exactly what the person said"[10] and for that reason did not provide any specific details that would directly rebut [the] defense's strategy that no one can be seen reacting to gunshots in the [surveillance] video, nor did any witness state they heard gunshots in relation to this incident.
>
> Additionally, Detective Ortiz's testimony also was properly admitted by [the court] on account that it was repeated, unobjected to, testimony previously covered in Ellison's and Detective Ortiz's direct examination and thus had no prejudicial impact on [Brown].
>
> Ellison testified at this trial that on February 28, 2020, after she left the nail salon and was headed home where White and Skinner were, she attempted to contact White, but he had not answered any of her calls. When she arrived at her residence at 2087 East Clementine Street, she testified that she was greeted by a "crack head" who told her[,] "We heard shooting. BB's [White] in the house." Similarly, Detective Ortiz testified that[,] during the time [Brown] and Thomas are not seen on camera from 3:53 p.m. to 3:59 p.m., when they [are] presumed to be inside of 2087 East

_____

[9] To the extent the court indicates that the evidence was admitted for a non-truth purpose, it should have been "admitted in conjunction with a limiting jury instruction to ensure that the jury considers the evidence solely [for the limited purpose] and not for the truth of the words spoken." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 493 (Pa. 2021). There does not appear to have been a limiting instruction. Therefore, we conclude that its admission was in error, leading to our subsequent analysis, indicated *infra*, whether that admission was harmless.

[10] We are unpersuaded by the court's line of reasoning in this regard because there is no requirement that hearsay's applicability or admissibility hinges on whether there is an exact replication of the out-of-court statement offered to prove the truth of the matter asserted.

Clementine Street, [two other males] can be seen on video at 3:57 p.m. walking up to the front of 2087 East Clementine Street when they both simultaneously turn around and walk back on Amber Street towards the corner store. The abrupt, synchronous decision of both men to turn around and walk away fro[m] East Clementine Street, where they are believed to be meeting [Brown] and Thomas, in the timeframe the murders are believed to have occurred, can also be interpreted as their reaction to hearing gunshots.

[The court] committed no error when admitting Detective Ortiz's hearsay testimony as it was offered to show the course of Detective Ortiz's conduct during his investigation of White and Skinner's death. The evidence was not admitted proving someone heard gunshots at the time and location of the murders nor did the testimony provide any exact details that would lead [the court] to conclude[] it was offered to prove that fact. Furthermore, [the court] reasonably concluded the testimony would have no prejudicial impact to [Brown] given that it only repeated evidence covered in Ellison's and Detective Ortiz's prior testimony.

Trial Court Opinion, 6/26/25, at 29-31 (record citations and name titles omitted).

Given that there were multiple sources of evidence that gunfire could be heard, without any refutation of any of these sources by Brown, Detective Ortiz's complained-of testimony, wherein he briefly described interviewing someone who had heard shots, was "merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence." **Adams**, 39 A.3d at 322. Therefore, we find its admission to be harmless. Consequently, Brown is due no relief on this issue.

During our examination of the record for this case, we noticed an obvious and patent error in one of Brown's sentencing orders, which requires additional action by the trial court. Specifically, although the jury found Brown

guilty of PIC at 3914-2021, located at count seven on the verdict sheet, the sentencing order and court commitment sheet for that case erroneously reflect that Brown was instead found guilty of possession of firearm by a prohibited person in violation of 18 Pa.C.S. § 6105. *See* Verdict Sheet, 3914-2021, 3/21/24; N.T. Jury Trial, 3/21/24, at 8; Sentencing Order, 3914-2021, 3/21/24; Court Commitment Sheet, 3914-2021, 3/21/24. Accordingly, we remand to allow the trial court to issue a new, corrected sentencing order for the case at 3914-2021, and affirm the judgments of sentence in all other respects. *See, e.g.*, *Commonwealth v. Umoh*, 311 A.3d 24, 34 (Pa. Super. 2024) (*sua sponte* remand for correction of a sentencing order that listed the defendant's contempt conviction as a violation under an incorrect statute number).[11]

Case remanded for correction of a patent and obvious error in sentencing order at 3914-2021. Judgments of sentence affirmed in all other respects. Jurisdiction relinquished.

---

[11] We need not vacate Brown's judgments of sentence, as directing the court to correct Brown's sentencing order does not affect the court's overall sentencing scheme. *Cf. Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006) ("If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan." (cleaned up)).

- 19 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/8/2026